# United States Court of Appeals
## For the First Circuit

No. 20-1507

CALVARY CHAPEL OF BANGOR,

Plaintiff, Appellant,

v.

JANET T. MILLS, in her official capacity as Governor of the State of Maine,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Roger K. Gannam, with whom Mathew D. Staver, Horatio G. Mihet, Daniel J. Schmid, and Liberty Counsel were on brief, for appellant.
Stephen M. Crampton and Thomas More Society on brief for Emmanuel Bible Baptist Church, Grace Community Chapel, First Church of Waterville, New Hope Evangelical Free Church, Athens Church of the Open Bible, Faith Bible Church, Cherryfield Church of the Open Bible, Calvary Chapel St. Croix Valley, Life Community Church, Hosanna Church, First Baptist Church of Waldoboro, Guilford Christian Fellowship, The Rock Church of Bangor, New Hope Evangelical Free Church, Charleston Church, Centerpoint Community Church, Clinton Baptist Church, St. Albans Union Church, New Beginnings Church of God, Machias Valley Baptist, and Stetson Union Church, amici curiae.

Stephen C. Whiting and The Whiting Law Firm on brief for Adrienne Bennett, amicus curiae.

Christopher C. Taub, Deputy Attorney General, with whom Aaron M. Frey, Attorney General, and Sarah A. Forster, Assistant Attorney General, were on brief, for appellee.

Alex J. Luchenitser, Richard B. Katskee, Kenneth D. Upton, Jr., Sarah R. Goetz, David A. Soley, James G. Monteleone, and Bernstein Shur on brief for Americans United for Separation of Church and State, amicus curiae.

Alex J. Luchenitser, Richard B. Katskee, Kenneth D. Upton, Jr., Sarah R. Goetz, David A. Soley, James G. Monteleone, Bernstein Shur, Steven M. Freeman, David L. Barkey, Amy E. Feinman, Jeffrey I. Pasek, and Cozen O'Connor on brief for Americans United for Separation of Church and State, Anti-Defamation League, Bend the Arc, Central Conference of American Rabbis, Interfaith Alliance Foundation, Jewish Social Policy Action Network, Maine Conference, United Church of Christ, Men of Reform Judaism, Methodist Federation for Social Action, National Council of the Churches of Christ in the USA, Reconstructionist Rabbinical Association, Union for Reform Judaism, and Women of Reform Judaism, amici curiae.

December 22, 2020

**SELYA**, <u>Circuit Judge</u>.  This interlocutory appeal arises out of the chaotic early weeks of the COVID-19 pandemic. Defendant-appellee Janet T. Mills, the Governor of Maine, responded to the growing threat of contagion by issuing a series of executive orders limiting all "non-essential" activities and gatherings, arguably including those by religious organizations. In the court below, plaintiff-appellant Calvary Chapel of Bangor (the Chapel) contended that these orders violated several federal and state constitutional and statutory provisions, including, principally, the Free Speech, Free Exercise, Assembly, and Establishment protections of the First Amendment.  <u>See</u> U.S. Const. amend. I.  The district court found the Chapel's contentions wanting and refused its request for a temporary restraining order. <u>See</u> <u>Calvary Chapel of Bangor</u> v. <u>Mills</u>, 459 F. Supp. 3d 273, 283-288 (D. Me. 2020).

In this venue, the Chapel renews its substantive claims and asserts that the district court abused its discretion by denying the Chapel's request for immediate relief.  But a jurisdictional barrier looms at the threshold, which prevents us from reaching the substance of the Chapel's contentions. Consequently, we dismiss the appeal without prejudice for lack of appellate jurisdiction.

**I. BACKGROUND**

We draw the facts from the limited record available in the district court, including the Chapel's verified complaint and accompanying motion, the Governor's response, and the various exhibits proffered by the parties. The Chapel is a nonprofit religious organization that operates an approximately 10,000-square-foot church facility in Orrington, Maine. By all accounts, the onset of the COVID-19 pandemic in early 2020 significantly disrupted the Chapel's usual routine of staging weekly worship services and other in-person activities for its congregants.

COVID-19 is a respiratory illness caused by a novel (and highly transmissible) coronavirus known as SARS-CoV-2. The first outbreak of the disease was identified in Wuhan City, China, during December of 2019. The virus spread worldwide with alarming speed.

The United States Department of Health and Human Services declared the coronavirus a national public health emergency on January 31, 2020, retroactive to January 27. Governor Mills proclaimed a corresponding state of civil emergency in Maine on March 15.

The Governor's emergency proclamation was the first in a rapid-fire series of executive actions designed to prevent and/or slow the spread of the virus among Maine residents. Early on, in-person gatherings (particularly those involving dense crowds or extended exposure to other persons) were identified as a major

vector of transmission. Citing the need to limit the propagation of the virus through such gatherings, Governor Mills issued a series of four executive orders between March 18 and April 29, 2020, which imposed emergency regulations on assembly within the state. We chronicle them briefly:

- Executive Order 14, issued on March 18, prohibited gatherings of more than ten people for any "social, personal, [or] discretionary events," including "faith-based events."

- Executive Order 19, issued on March 24, authorized "Essential Businesses and Operations" to exceed the ten-person gathering limit; subject, however, to social distancing and sanitation guidelines.

- Executive Order 28, issued on March 31, directed all persons residing in Maine to "stay at their homes or places of residence," except as needed to engage in "essential" employment or activities. This exception captured tasks deemed critical for resident health and safety, including (as illustrated in the order) accessing childcare, shopping for household supplies, and obtaining physical or behavioral medical treatment.

- Executive Order 49, issued on April 29, provided for implementation of Governor Mills's plan to

restart Maine's economy — a staggered (four-phase) relaxation of the earlier restrictions. For ease in exposition, we refer to this quartet of executive orders as the "gathering orders" and to the April 29 order as promulgating "the re-opening plan."

The dispute between the parties erupted at 8:30 p.m. on May 4, at which time the Chapel e-mailed a communique to Governor Mills, insisting that the gathering orders be revoked by 1:00 p.m. the following day. Receiving no response within the stipulated time frame, the Chapel sued Governor Mills in Maine's federal district court on May 5. Its verified complaint alleged that the gathering orders transgressed ten different provisions of federal and state law, both constitutional and statutory.[1] On the heels of this filing, the Chapel moved for a temporary restraining order or, in the alternative, a preliminary injunction.

Two days later, the district court convened a telephone conference with the parties. We have no transcript of that

---

[1] The Chapel claimed violations of the Free Exercise Clause of the First Amendment (Count I); the First Amendment right to peaceful assembly (Count II); the Free Speech Clause of the First Amendment (Count III); the Establishment Clause of the First Amendment (Count IV); the Equal Protection Clause of the Fourteenth Amendment (Count V); the Guarantee Clause of Article IV (Count VI); the Maine Constitution's guarantee of free exercise of religion (Count VII); the Maine Constitution's freedom of speech guarantee (Count VIII); legislative prerogatives (Count IX); and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-2000cc-5 (Count X).

conference, but Governor Mills apparently agreed to file an expedited response to the Chapel's request for some sort of interim injunctive relief. The Governor submitted an opposition to the Chapel's motion at the close of business the following day. On May 9, the district court issued a thoughtful rescript, in which it denied the Chapel's request for a temporary restraining order. See Calvary Chapel, 459 F. Supp. 3d at 288. The Chapel did not press for a hearing on preliminary injunction but, rather, filed this appeal.

## II. ANALYSIS

"[F]ederal courts have an omnipresent duty to take notice of jurisdictional defects, on their own initiative if necessary." Whitfield v. Mun. of Fajardo, 564 F.3d 40, 44 (1st Cir. 2009). We start — and end — there.

The denial of a temporary restraining order is not ordinarily appealable, save for certain "narrow exceptions." Mass. Air Pollution & Noise Abatement Comm. v. Brinegar, 499 F.2d 125, 126 (1st Cir. 1974). The parties — who agree on little else — urge us to find that the district court's denial of the temporary restraining order in this case qualifies under one such exception. In other words, they stand united in asking us to hold that we have appellate jurisdiction. We are not so sanguine.

It is common ground that subject matter jurisdiction cannot be conferred on a federal court by the parties' agreement

alone.  See Espinal-Domínguez v. Puerto Rico, 352 F.3d 490, 495 (1st Cir. 2003).  We must, therefore, mount an independent inquiry into the existence vel non of appellate jurisdiction.

As a general rule, the jurisdiction of the court of appeals is limited to "appeals from . . . final decisions of the district courts."  28 U.S.C. § 1291.  Of course, this general rule — like most general rules — admits of exceptions.  As relevant here, Congress has fashioned an exception that gives the courts of appeals immediate appellate jurisdiction over appeals from non-final district court orders "granting, continuing, modifying, refusing or dissolving injunctions."  Id. § 1292(a)(1).  The parties identify this exception as the hook upon which appellate jurisdiction may be hung.

This is a heavy lift:  the denial of a temporary restraining order does not normally fall within the compass of section 1292(a)(1).  See S.F. Real Est. Inv'rs. v. Real Est. Inv. Tr. of Am., 692 F.2d 814, 816 (1st Cir. 1982) (explaining that "the term 'injunction' is understood not to encompass temporary restraining orders").  Even so, if an appellant can make a three-part showing — demonstrating that the refusal of a temporary restraining order had the practical effect of denying injunctive relief, will likely cause serious (if not irreparable) harm, and can only be effectually challenged by means of an immediate appeal — section 1292(a)(1) may be invoked.  See Watchtower Bible & Tract

Soc'y of N.Y., Inc. v. Colombani, 712 F.3d 6, 12 (1st Cir. 2013); Fideicomiso De La Tierra Del Caño Martín Peña v. Fortuño, 582 F.3d 131, 133 (1st Cir. 2009) (per curiam).  We examine the Chapel's showing on each of these three parts separately, mindful that it is the Chapel's burden to carry the devoir of persuasion on each of them and that a failure to do so on any one part is fatal.  See Watchtower Bible, 712 F.3d at 12; Nwaubani v. Grossman, 806 F.3d 677, 680 (1st Cir. 2015).

     The Chapel contends that the district court's decision to deny it a temporary restraining order functionally precluded any possibility of a preliminary injunction.  This contention elevates hope over reason.

     We previously have held that we will deem a ruling to have had the practical effect of denying injunctive relief either if it was issued after a full adversarial hearing or if no further interlocutory relief is available in the absence of immediate review.  See Fideicomiso De La Tierra, 582 F.3d at 133.  It strains credulity to call what happened below a "full adversarial hearing."  The district court heard the parties only in a telephone conference of indeterminate length; no verbatim record was kept of what was said during the conference; no discovery was conducted in advance of the conference; no witnesses were called during the conference; and the court did not ask to hear from the Chapel after the Governor filed her opposition.  To say that what happened was a "full"

adversarial hearing would be like saying that a CliffsNotes version of War and Peace was a "full" account of Tolstoy's original work. What walks like a duck and squawks like a duck usually is a duck, and we see no reason to disregard the district court's unambiguous description of itself as adjudicating only the Chapel's motion for a temporary restraining order.[2]  See, e.g., Calvary Chapel, 459 F. Supp. 3d at 277 (describing issue sub judice as "[the Chapel's] Motion for Temporary Restraining Order, which seeks emergency relief before Sunday, May 10, 2020").  Indeed, we think that the district court's cautious choice to limit its order solely to the denial of a temporary restraint accurately reflected the absence of a full adversarial hearing.

In addition, the sparseness of the record argues powerfully in favor of a finding that pathways for further interlocutory relief remained available in the district court. See, e.g., id. at 281 n.11 (noting that record lacks "any information about the number of members Calvary Chapel has or the number of members who regularly attend its worship services"); id. at 277 n.2 (declining to consider amicus brief "[b]ecause of the tight timelines, and because [the Chapel] has not had time to file

---

[2] Even if these circumstances qualified as a close call — and we do not believe that they do — our settled practice when confronted with borderline cases is to "resolve[] against immediate appealability."  Morales Feliciano v. Rullan, 303 F.3d 1, 7 (1st Cir. 2002).

any opposition to the amicus motion"); id. at 287 (noting that the Chapel failed to develop its argument "that the orders foster government entanglement with religion"). These comments and gaps in the record suggest that a preliminary injunction hearing would not have been either a redundancy or an exercise in futility. And whether or not a better-informed proceeding would have yielded a different outcome — a matter that is left entirely to speculation on this truncated record — the intervening development of the record would have facilitated subsequent appellate review. As matters now stand, the parties dispute key factual questions — including whether Maine classified religious gatherings as essential activity for purposes of Executive Order 28 or would have permitted gatherings at essential businesses — that the district court has not yet assessed. Finally, the denial of a preliminary injunction would have been immediately appealable under section 1292(a)(1), thus affording the Chapel an avenue for timely appellate review.

        To say more about the first requirement for immediate appealability would be to paint the lily. The record makes manifest that this case, in its present posture, does not display the criteria that we previously have identified as characterizing a de facto denial of injunctive relief. See Fideicomiso De La Tierra, 582 F.3d at 133.

The fact that the Chapel stumbles at the first step of the tripartite inquiry is sufficient to defeat its claim of appellate jurisdiction. See Watchtower Bible, 712 F.3d at 12; Nwaubani, 806 F.3d at 680. For the sake of completeness, though, we note that the remaining requirements for appealability are not satisfied here.

To begin, we do not believe that the lack of immediate appealability can be said to cause serious harm. Although we do not gainsay that even a temporary restriction of traditional in-person worship opportunities may represent a tangible hardship for religious organizations and their members, the seriousness of any given harm can only be assessed in context. Jumping from a second-story window undoubtedly entails a risk of serious harm, but the harm may seem less serious if the jumper's only other choice is to remain in a burning building. Here, the need for context requires that a significant countervailing factor must be included in the mix: the harm of which the Chapel complains has its origins in the extraordinary epidemiological crisis that has engulfed Maine and every other part of the United States. This countervailing factor necessarily informs our assessment of the severity of the harm that the Chapel faced as a result of the district court's denial of its motion for a temporary restraining order. See Carson v. Am. Brands, Inc., 450 U.S. 79, 86 (1981).

Let us be perfectly clear: public officials do not have free rein to curtail individual constitutional liberties during a public health emergency. See Roman Catholic Diocese of Brooklyn v. Cuomo, No. 20A87, 2020 WL 6948354, at *3 (U.S. Nov. 25, 2020) (per curiam) (stating that "even in a pandemic, the Constitution cannot be put away and forgotten"); Jacobson v. Massachusetts, 197 U.S. 11, 31 (1905) (discussing courts' duty to intervene when legislative action lacks "real or substantial relation" to public health outcomes, or otherwise represents a "plain, palpable invasion" of constitutional rights). Even so, the public interest demands that public officials be accorded considerable latitude to grapple with the "dynamic and fact-intensive" considerations involved in mounting an effective response. S. Bay United Pentecostal Church v. Newsom, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring). Carefully balancing these considerations against the encroachment on the rights of the Chapel and its members, the district court determined that the gathering restrictions would not inflict irreparable harm. See Calvary Chapel, 459 F. Supp. 3d at 288.

This supportable determination helps to clarify that the absence of immediate appealability — like the denial of the temporary restraining order itself — will not cause serious harm. Given the gravity of the situation and the fact that events remained in flux, we discern no sufficient basis for finding that

the Chapel can satisfy the second of the three requirements for immediate appealability of a temporary restraining order. In this regard, we deem it important that the Chapel retained other means to organize worship services for its congregants, including the sponsorship of online worship services, the holding of drive-in services, and the hosting of gatherings of ten or fewer people. See id. at 285. While these options are less than ideal, their availability mitigated the harm to the Chapel and its worship community during the short run.

Nor has the Chapel demonstrated that effective appellate review of the constitutionality of the gathering orders, as those orders affect the Chapel, will be thwarted if the Chapel's ability to challenge them is confined to traditional litigation channels. See, e.g., Navarro-Ayala v. Hernandez-Colon, 956 F.2d 348, 350 (1st Cir. 1992). We recognize, of course, that idiosyncratic circumstances can render an attempted challenge to an interlocutory order "insusceptible of effective vindication" when subject to appreciable delay. Quiros Lopez v. Unanue Casal (In re Unanue Casal), 998 F.2d 28, 32 (1st Cir. 1993). Examples of such circumstances include an interlocutory order that would cause "trade secrets [to] be revealed," Chronicle Publ'g Co. v. Hantzis, 902 F.2d 1028, 1031 (1st Cir. 1990), or one that would "irretrievably" deprive a party of "an important tactical

litigation advantage," Kartell v. Blue Shield of Mass., Inc., 687 F.2d 543, 552 (1st Cir. 1982).

The case at hand is woven from quite different cloth. The district court's denial of the temporary restraining order did not herald an irreversible or meaningful shift in the relationship between the parties. Instead, the denial merely kept in place the same gathering restrictions under which the Chapel already was operating. Cf. Cobell v. Kempthorne, 455 F.3d 317, 322-23 (D.C. Cir. 2006) (vacating injunctive order because it imposed new obligations on a litigant that "[were] not correctable at the end of the litigation").

Here, moreover, the effect of the denial was of modest temporal duration. The Chapel had available to it the option of pressing for a hearing on preliminary injunction — and there is every reason to believe, especially given the district court's prompt attention to the Chapel's request for a temporary restraining order — that such a hearing would have been held expeditiously. Had the Chapel prevailed in its quest for a preliminary injunction, the harm of which it complains would have been abated; and had the Chapel not prevailed, the order denying a preliminary injunction would have been immediately reviewable. See 28 U.S.C. § 1292(a)(1). Either way, the Chapel has failed to make the third showing required for immediate appealability of the denial of a temporary restraining order.

We need go no further. "Federal courts are courts of limited jurisdiction." Rhode Island v. EPA, 378 F.3d 19, 22 (1st Cir. 2004). Thus, jurisdictional boundaries must be scrupulously observed. See Sierra Club v. Marsh, 907 F.2d 210, 214 (1st Cir. 1990); In re Recticel Foam Corp., 859 F.2d 1000, 1006 (1st Cir. 1988). As a general rule, the denial of a temporary restraining order is not immediately appealable, see S.F. Real Est. Inv'rs, 692 F.2d at 816, and thus falls outside the boundaries of our appellate jurisdiction. This appeal comes within the sweep of the general rule, not within the long-odds exception to it. Although we appreciate the importance of the issues that the Chapel seeks to raise, its appeal is premature, and there is no principled way for us to reach the merits of the appeal.

### III. CONCLUSION

For the reasons elucidated above, the Chapel's appeal is dismissed without prejudice for lack of appellate jurisdiction. The parties shall bear their own costs.

**So Ordered.**

— Concurring Opinion Follows —

**BARRON**, <u>Circuit Judge</u>, **concurring in part and concurring in the judgment.** I agree that the denial of the temporary restraining order in this case did not have the practical effect of denying a preliminary injunction. Because that conclusion suffices to explain why the denial of the temporary restraining order in this case is not appealable, I would not go on to address the counterfactual question of whether the denial would have been appealable if it did have the practical effect of denying a preliminary injunction. Especially when we are explaining why we lack jurisdiction over an appeal from an order denying relief from an alleged violation of constitutional rights brought about by emergency legislation, I see little reason to speak more broadly than necessary.